UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARLENE RUIZ,

    Plaintiff,

v.                                                            Case No.  8:17-cv-735-T-24 TGW

PUBLIX SUPER MARKETS, INC.,

    Defendant,
_____

PUBLIX SUPER MARKETS, INC.,

    Defendant/Counter-Plaintiff

v.

ARLENE RUIZ, ALEXANDER PEREZ-
VARGAS, ANDREA VARGAS, and
JESSICA VARGAS,

    Counter-Defendants.
_____/

## ORDER

    This cause comes before the Court on Publix's Motion for Summary Judgment.[1] (Doc. No. 34).  Plaintiff Arlene Ruiz opposes the motion and asks for summary judgment in her favor instead.  (Doc. No. 41).  As explained below, Publix's motion is granted.

## I.  Standard of Review

    Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] Jessica Vargas, Alexander Perez-Vargas, and Andrea Vargas ("the Vargas Counter-Defendants") join in Publix's motion for summary judgment. (Doc. No. 48).

56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

## II. Background[2]

Irialeth Rizo is a former Publix employee[3] who died from cancer on January 19, 2015. During her employment with Publix, Rizo participated in the Publix Super Markets, Inc. Employee Stock Ownership Plan ("ESOP") and the Publix Super Markets, Inc. 401(k) SMART Plan ("401(k) Plan"). The Summary Plan Descriptions for the ESOP and the 401(k) Plan both provide for an initial beneficiary designation via a Beneficiary Designation Card. (Doc. No. 38-1, p. 9, 46). In order to change the designated beneficiary, these plans provide the following directives:

> It is important to remember to change your beneficiary designation when the situation calls for it . . . . If you wish to change your beneficiary(ies), please obtain a Beneficiary Designation Card from your work location's Publix Communication Center and complete, sign and submit it to the Retirement Department, Publix Corporate

---

[2]The Court is construing the facts in the light most favorable to Ruiz, despite the fact that Ruiz is also seeking summary judgment. Even after construing the facts in the light most favorable to Ruiz, the Court finds that summary judgment in favor of Publix is warranted.

[3]Rizo's employment with Publix ended on March 22, 2012. (Doc. No. 38, ¶ 18).

> Office, Lakeland, Florida. Your change of beneficiary designation is not valid under the Plan until the Retirement Department receives and processes the properly completed Beneficiary Designation Card.

(Doc. No. 38-1, p. 11, 47). The plans also provide the following instructions for completing a Beneficiary Designation Card:

> Remember that a Beneficiary Designation Card is a legal document. It should not contain mark outs, erasures or correction fluid. It should be typed or printed in ink, and you must sign and date the card. Your beneficiary designation is not valid under the Plan until the Retirement Department receives and processes the properly completed Beneficiary Designation Card.

(Doc. No. 38-1, p. 10, 46).

In October of 2008, Publix received Beneficiary Designation Cards from Rizo changing her prior designated beneficiaries for both her ESOP and 401(k) Plan. (Doc. No. 38-5; Doc. No. 38, ¶ 22). These Beneficiary Designation Cards named (1) her nephew, Alexander Perez-Vargas, (2) her niece, Andrea Vargas, and (3) her niece, Jessica Vargas, as her beneficiaries for both her ESOP and 401(k) Plan. (Doc. No. 38-5; Doc. No. 38, ¶ 22).

In September of 2011, Rizo was diagnosed with cancer. On January 15, 2015, when Rizo was getting her affairs in order after her cancer had progressed, Rizo called Publix to find out how to change her beneficiaries for her ESOP and 401(k) Plan. (Doc. No. 44, depo p. 79, 83). Arlene Ruiz was with Rizo while Rizo made the call on speaker phone.[4] (Doc. No. 44, depo. p. 79–82). According to Ruiz, the Publix representative told Rizo that in order to change her beneficiaries, she must do the following:

> She must write a letter. And in the letter[,] she must put the person she wants, with their Social Security number . . . . That she must

---

[4] Rizo and Ruiz had been in a long-term, committed relationship prior to Rizo's death.

        include her name, her Social Security number, cards[5] if she can get ahold of them. The main thing was, they kept emphasizing that the most important part of the letter was to make sure she signed it and dated, that was a must.

(Doc. No. 44, depo p. 86–87). The Publix representative said that the cards really were not important because Rizo was not an active associate at the time. (Doc. No. 44, depo p. 88).

    On January 18, 2015, Rizo dictated a letter that Ruiz transcribed. (Doc. No. 44, depo p. 88–90). The letter stated the following:

        January 18, 2015

        To Publix Retirement Department,

            I am writing to update my personal information, and to make changes to my beneficiary for both my ESOP & my 401k accounts[.] Enclosed you will find new cards made out and to be in effect right away as I dated and signed this request.
            My updated information is as follows: My new beneficiary is Arlene Ruiz [Social Security number redacted] 100% as stated on cards enclosed.
        (My name is:) Irialeth Rizo
        (My <u>new</u> address = ) [address redacted]
        My SS# is: [Social Security number redacted]
            Please update all my information I am requesting[.] Any questions you can reach me at [phone numbers redacted.] My new update [sic] beneficiary cards are enclosed.

        Thank you,
        /s/ Irialeth Rizo
        01-18-2015

(Doc. No. 47). After Ruiz drafted the letter, Rizo read it two or three times and then signed and dated it. (Doc. No. 44, depo p. 90). Additionally, Rizo directed Ruiz to put Ruiz's name and Social Security number on two cards. (Doc. No. 44, depo p. 91–92). At some point later, Rizo

---

    [5]The Court assumes that she is referring to the Beneficiary Designation Cards.

gave Ruiz a sealed envelope addressed to Publix's corporate office and asked Ruiz to mail the envelope. (Doc. No. 44, depo p. 91–92). Ruiz did not see what was inside the envelope, but she assumed it was the letter she had transcribed. (Doc. No. 44, depo p. 93).

Rizo died on January 19, 2015. Thereafter, Publix received the January 18, 2015 letter from Rizo, as well as the Beneficiary Designation Cards.[6] On the signature lines of the Beneficiary Designation Cards, Rizo did not place her signature; instead, she wrote "as stated in letter." (Doc. No. 41, ¶ 22). According to Publix, after it received the letter and cards, Publix did not process the change of beneficiary, because the Beneficiary Designation Cards were not properly filled out, as Rizo had not signed and dated them. (Doc. No. 43, depo p. 19). According to Publix, it returned the Beneficiary Designation Cards to Rizo with a letter explaining why they were being returned. (Doc. No. 43, depo p. 19–21). No such letter from Publix was ever received, despite the fact that other correspondence from Publix was received.[7]

When Ruiz made a claim for benefits under the ESOP and the 401(k) Plan after Rizo's death, Publix denied her claim, stating the following:

> This correspondence is to advise you Publix Super Markets, Inc. does not consider you to be the designated beneficiary of the above referenced plans for the deceased Participant: Irialeth Rizo.
>
> This office received uncompleted and unsigned beneficiary designation cards with the only inscription on the signature line reading "as requested in letter." The uncompleted and unsigned

---

[6]Publix contends that Rizo's letter and the Beneficiary Designation Cards were not received together. (Doc. No. 40, depo p. 13).

[7]Publix did not make a copy of the Beneficiary Designation Cards that Rizo filled out or a copy of the letter it allegedly sent to Rizo explaining the deficiencies in the cards. (Doc. No. 40, depo p. 16). As a result, no one has a copy of the cards or Publix's letter, and both Publix and Ruiz have relied on Publix's notations in its records about these items.

> beneficiary designation cards were returned to Ms. Rizo to complete and sign, but nothing further was received from Ms. Rizo. This office did not receive properly designated beneficiary cards listing you as a beneficiary; therefore, there was no change to the designated beneficiaries for both plans.
>
> Please see page 5 of the enclosed Summary Plan Description for both the ESOP & 401(k) SMART Plan, which states a beneficiary designation card must be typed or printed in ink and must be signed. In addition, the beneficiary designation is not valid under the Plan until the Retirement Department received and processes a properly completed beneficiary designation card.

(Doc. No. 46).

Thereafter, Ruiz filed suit against Publix under ERISA for benefits under the ESOP and the 401(k) Plan as Rizo's beneficiary. (Doc. No. 5). In response, Publix filed a counterclaim for declaratory relief, asking this Court to declare the following: (1) that Rizo did not effect a change of beneficiary for her ESOP and 401(k) Plan in favor of Ruiz; (2) that Publix properly denied Ruiz's claim to the proceeds of the ESOP and the 401(k) Plan; (3) that Publix properly distributed the proceeds of the 401(k) Plan to the Vargas Counter-Defendants; (4) that Publix properly distributed 1/3 of the ESOP proceeds to Counter-Defendant Jessica Vargas; (5) that Publix is entitled to distribute the remaining ESOP proceeds to Counter-Defendants Alexander Perez-Vargas and Andrea Vargas; and (6) that Publix owes no duties or obligations to Ruiz.[8] (Doc. No. 10).

### III.  Motion for Summary Judgment

Both parties move for summary judgment, asking this Court to conduct a *de novo* review

---

[8] Alternatively, in the event this Court concludes Ruiz is the proper beneficiary, Publix requests that this Court order the Vargas Counter-Defendants to reimburse the proceeds Publix has paid them.

of Publix's decision to deny Ruiz benefits under the ESOP and the 401(k) Plan.[9]  Under the *de novo* standard of review, this Court must determine if the decision to deny Ruiz benefits under the plans was "wrong," meaning that this Court disagrees with the decision.  See Oliver v. Aetna Life Ins. Co., 613 Fed. App'x 892, 896 (11th Cir. 2015).  Under the *de novo* standard, the Court employs a high level of scrutiny and does not give judicial deference to the decision to deny Ruiz benefits.  See Dunn v. Cox, 560 F. Supp. 2d 1247, 1253 (M.D. Fla. 2008).  After conducting a *de novo* review, the Court concludes that Publix's decision was not wrong, and as such, Publix is entitled to summary judgment.

Based on the facts construed in the light most favorable to Ruiz, two things are clear: (1) Rizo intended to change the beneficiary of her ESOP and 401(k) Plan to Ruiz and attempted to do so; and (2) Rizo did not strictly comply with the Summary Plan Descriptions' directives for how to change her beneficiaries.  As a result, the parties dispute whether it was correct for Publix to require strict compliance with the Summary Plan Descriptions' directives for how to change her beneficiaries, or whether Publix's decision was wrong because the equitable doctrine of substantial compliance applies and results in Ruiz being the designated beneficiary of the ESOP and the 401(k) Plan.[10]

---

[9] ERISA provides a six-step review process of the decision to deny ERISA benefits.  See Oliver v. Aetna Life Ins. Co., 613 Fed. App'x 892, 896 (11th Cir. 2015).  The first step is to apply a *de novo* standard of review to determine if the decision to deny benefits was wrong.  See id.  If the Court determines that Pubix's decision was not wrong, the Court's review is over.  See id.

[10] Ruiz does not explicitly argue that the doctrine of equitable estoppel applies based on the phone conversation between Rizo and Publix, wherein the Publix representative told Rizo that she could send a letter, rather than using the Beneficiary Designation Cards, to change her beneficiary.  "[E]quitable estoppel may be applied where (a) the provisions of the plan at issue are ambiguous such that reasonable persons could disagree as to their meaning or effect, and (b)

7

The case of Phoenix Mutual Life Insurance Co. v. Adams, 30 F.3d 554 (4th Cir. 1994), discussed the federal common law doctrine of substantial compliance. The court stated the following:

> [ERISA] contains no provision expressly governing the change of beneficiaries pursuant to a given policy. ERISA is silent on the matter of which party shall be deemed beneficiary among disputing claimants. When ERISA fails to address an issue and the state law governing that issue has been preempted, the Supreme Court and the Fourth Circuit have authorized federal courts to develop federal common law of rights and obligations under ERISA-regulated plans.

Id. at 562 (citations omitted). The court quoted the underlying district court's definition of the federal common law doctrine of substantial compliance and then explained its purpose:

> [P]ursuant to federal common law, an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.
> \*   \*   \*
> By definition, substantial compliance is less than actual compliance. The point of the doctrine . . . is to give effect to an insured's intent to comply when that intent is evident. The insured decedent need not

---

representations are made to the [participant] involving an oral interpretation of the plan." Alday v. Container Corp. of Am., 906 F.2d 660, 666 (11th Cir. 1990).

In her statement of facts, Ruiz states that what the Publix representative said to Rizo—that the Beneficiary Designation Cards were not important because Rizo was not an active associate at the time—was consistent with the Summary Plan Descriptions' provision that participants should "obtain a Beneficiary Designation Card from your work location's Publix Communication Center." (Doc. No. 38-1, p. 11, 47). In her statement of facts, Ruiz contends that the cited language only applies to current employees and does not apply to former employees. The Court finds that Ruiz's interpretation of that language is not reasonable. A more reasonable interpretation of that language would be that a participant can go to their current or former work location to obtain a Beneficiary Designation Card. Furthermore, that cited language only addresses *where* to get the cards, not the situations in which the cards are necessary. Because there is no ambiguity, the doctrine of equitable estoppel does not apply.

8

> actually comply, but need only *substantially* comply with the change of beneficiary provisions of the policy to effectuate the desired change. A federal common law of substantial compliance requiring that an insured intend to change his beneficiary and that he take positive action to effectuate that intent furthers the purposes of ERISA without compromising the integrity of policies issued by plan sponsors.

Id. at 564–65 (citation omitted).

Based on Phoenix Mutual, Ruiz argues that the doctrine of substantial compliance should be applied to give effect to Rizo's intent and attempt to change the beneficiaries of her ESOP and 401(k) Plan to Ruiz by sending the letter explicitly stating her intent, as well as sending the Beneficiary Designation Cards referencing the letter. The Court agrees that if the doctrine of substantial compliance were applied, the facts construed in the light most favorable to Ruiz show: (1) that Rizo intended to change her beneficiary of her ESOP and 401(k) Plan to Ruiz, and (2) that Rizo attempted to effectuate the change by undertaking positive action that was similar to the action required by the change of beneficiary provisions of the policy (in that both consisted of her explicitly stating her intent to change her beneficiary, identifying the new beneficiary by name and Social Security number, and signing and dating the document). However, it is not clear that the Eleventh Circuit recognizes the doctrine of substantial compliance, and even if it did, it is not clear that the doctrine is still viable after the Supreme Court's decision in Kennedy v. Plan Administrator for DuPont Savings and Investment Plan, 555 U.S. 285 (2009).

The Eleventh Circuit has never addressed the issue of whether it recognizes the doctrine of substantial compliance. The only case that this Court has found in which the Eleventh Circuit addresses the doctrine is Liberty Life Assurance Co. of Boston v. Kennedy, 358 F.3d 1295, 1303

9

(11th Cir. 2004), in which the court stated that its decision obviated the need to discuss arguments related to the doctrine of substantial compliance. Furthermore, decisions of the district courts within the Eleventh Circuit are not helpful in determining whether this Court should apply the doctrine of substantial compliance here.

Publix points to the decision in Fitch v. Unum Life Insurance Co. of America, 913 F. Supp. 2d 1253, 1262–63 (N.D. Ala. 2012), in which the court rejected the doctrine of substantial compliance. In Fitch, the decedent was fired by his employer on April 24, 2009 at a time when he was not expected to live much longer. See id. at 1256. Before he left the company, the decedent asked how to convert his group life insurance policy to individual coverage. See id. He never received the paperwork necessary to convert his policy, and he died on June 10, 2009. See id. at 1257. When his wife made a claim for his life insurance benefits, her claim was denied because he had not submitted an application to convert his coverage within 31 days after the termination of his employment. See id.

In analyzing the insurance company's decision to deny the wife's claim for the life insurance benefits, the court stated the following regarding ERISA plans:

> ERISA requires that a fiduciary shall discharge his duties . . . in accordance with the documents and instruments governing the plan. The significance of a plan's written terms cannot be understated. As the Supreme Court has said, [a] written plan is . . . required [so] that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan.

Id. at 1260 (quotation marks and citations omitted). The wife argued that the decedent had substantially complied with the terms of the plan that required him to submit an application to convert his coverage, because he had made a call in an attempt to find out how to convert his coverage. See id. at 1262. The court rejected her argument, stating the following:

10

> [The wife's argument of substantial compliance] would defeat ERISA's requirement of a written plan. Ordinarily, a court must strictly enforce the terms of an ERISA plan. If substantial compliance is enough to entitle a beneficiary to payment, then a beneficiary may, on his own, alter the plain terms of the Plan. This result is wholly inconsistent with the purpose of the written plan requirement. Moreover, even courts that have applied the doctrine of substantial compliance in the ERISA context would not use this doctrine to establish a beneficiary's entitlement to benefits. See, e.g., Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 565 (4th Cir. 1994) (recognizing that a participant's failure to change the beneficiary under the plan is a situation different from determining the beneficiary's entitlement to benefits, and allowing the doctrine of substantial compliance in that unique situation).

Fitch, 913 F. Supp. 2d at 1262–63.

Publix relies on the Fitch court's conclusion that substantial compliance conflicts with ERISA's requirements of a written plan, because substantial compliance would give legal effect to conduct that is not the same as the conduct specifically required by the terms of the plan. Ruiz, on the other hand, argues that Fitch has no applicability to the instant case, because Fitch did not address the doctrine of substantial compliance in the context of the act of changing a beneficiary. The parties' differing interpretation reinforces this Court's conclusion that there is not clear recognition within the Eleventh Circuit regarding the viability of the doctrine of substantial compliance.

Next, Publix relies on the decision in Dunn v. Cox, which deals with the issue of changing a beneficiary. In Dunn, the issue before the court was which beneficiary designation form controlled—one form was dated August 2, 1990, named the decedent's son as the beneficiary, and was signed by the decedent; the other form was received in 2001, named the decedent's daughter and the decedent's significant other as the beneficiaries, but was not dated or signed by the decedent. See Dunn, 560 F. Supp. 2d at 1248, 1251. The Benefits Committee

determined that the 1990 beneficiary designation form controlled, because the 2001 form was invalid due to it not being signed by the decedent. See id. at 1249.

The decedent's significant other sued the son, and she argued to the court that the doctrine of substantial compliance should be applied to give the 2001 beneficiary designation form legal effect. See id. at 1254. The court noted that the Eleventh Circuit had never explicitly endorsed the doctrine of substantial compliance, and the Dunn court stated that it need not decide whether the doctrine was viable. See id. at 1256, 1257. Instead, the court found that even if the doctrine was viable within the Eleventh Circuit, the significant other did not establish that the unsigned 2001 beneficiary designation form substantially complied with the plan's requirement that a beneficiary designation form be signed. See id. at 1257.

The Dunn case, like the Fitch case, sheds no light on whether the doctrine of substantial compliance is viable within the Eleventh Circuit. Ruiz, on the other hand, cites two cases in support of her argument that the doctrine of substantial compliance is viable within the Eleventh Circuit.

In Metropolitan Life Insurance Co. v. Waddell, 194 F. Supp. 3d 1340, 1344, 1346 (N.D. Ga. 2016), the issue before the court was which beneficiary designation form should be given effect—a 1983 form that designated the decedent's wife or 2013 forms designating the decedent's son. The 2013 form was found and mailed to the insurance company months after the decedent's death, and the insurance company refused to give the 2013 form effect because it was not mailed to the insurance company by the decedent-insured. See id. at 1351–52. The summary plan description provided the following: "You may change the Beneficiary at any time by filing a new form with us. . . . When we receive a form changing the Beneficiary, the change

12

will take effect as of the date you signed it.  The change of Beneficiary will take effect even if you are not alive when it is received." See id. at 1346.  The insurance company interpreted the intent of the quoted language about receipt after death as only applying when the insured mails the designation form and dies while the form is in transit.  See id. at 1347.

Upon review of the insurance company's decision, the district court noted that it was not clear whether the Eleventh Circuit had adopted the doctrine of substantial compliance.  See id. at 1354.  However, the Waddell court noted that district courts within this circuit have applied it; yet the Waddell court only identified one such district court.[11]  See id. at 1354, 1355.  As a result, the Waddell court determined that the doctrine of substantial compliance was viable and applied it to the facts of the case.  See id at 1354.  Nevertheless, the Waddell court concluded that the decedent's 2013 beneficiary designation forms did not substantially comply with the plans because there was no evidence that the decedent intended to change the beneficiary due to the fact that he did not send the 2013 forms to the insurance company.  See id. at 1355.

The second case cited by Ruiz is Bohannon v. Manhattan Life Insurance Company, 555 F.2d 1205 (5th Cir. 1977), which is binding on this Court.  While the Bohannon case does deal with the issue of the validity of a change of beneficiary form, no where in the case does it cite to ERISA or apply the federal doctrine of substantial compliance.  Instead, the Bohannon case

---

[11]The Waddell court cited to First Capital Life Insurance Co.—in Conservation v. AAA Communications, Inc., 906 F. Supp. 1546 (N.D. Ga. 1995).  Ruiz does not discuss or even cite to the First Capital case, despite the fact that the First Capital case applied the doctrine of substantial compliance to the facts of the case.  See id. at 1560.  The First Capital case cites to the Fourth Circuit's decision in Phoenix Mutual as authority for the application of the doctrine of substantial compliance.  See id.

applied Georgia substantial compliance law to the facts of the case.[12]  See id. at 1210; see also Dunn, 560 F. Supp. 2d at 1257 n.18 (discussing Bohannon).

Thus, based on the above, the Court concludes that it is not clear whether the Eleventh Circuit has adopted the doctrine of substantial compliance.  However, even if it had, it is unclear whether the doctrine remains viable after the Supreme Court's decision in Kennedy v. Plan Administrator for DuPont Savings and Investment Plan, 555 U.S. 285 (2009).[13]

In Kennedy, the decedent participated in his employer's savings and investment plan ("SIP"), which was an ERISA plan.  See id. at 288–89.  The SIP required that all designations be made in a manner prescribed by the plan administrator, and the SIP provided forms for designating a change of beneficiary.  See id. at 288.  The SIP also permitted beneficiaries to submit a qualified disclaimer of benefits.  See id. at 289.

In 1974, the decedent signed a form designating his wife as the beneficiary of his SIP. See id.  The decedent and his wife divorced in 1994, and their divorce decree stated that the wife was divested of all claims to the decedent's employee benefit plans.  See id.  The decedent, however, did not execute any documents with the SIP to remove his ex-wife as the beneficiary. See id.

After the decedent died in 2001, his estate made a claim for the SIP funds.  See id. at 289–90.  The SIP denied the estate's claim, relying on the 1974 beneficiary designation of his

---

[12]The Bohannon case also cited to Norris v. Norris, 145 F.2d 99 (5th Cir. 1944).  See Bohannon, 555 F.2d at 1210.  However, the Norris case is a 1944 case, and as such, it pre-dates ERISA.

[13]Surprisingly, neither party cited to or addressed the Supreme Court's decision in Kennedy.

ex-wife. See id. at 290. The estate sued and argued that the divorce decree controlled, in which the ex-wife waived her right to claim any benefits under the SIP. See id.

The issue before the Court was "whether a beneficiary's federal common law waiver of plan benefits is effective where that waiver is inconsistent with plan documents." See id. at 291. The Court determined "that the plan administrator did its statutory ERISA duty by paying the benefits to [the ex-wife] in conformity with the plan documents." Id. at 299–300. The Court explained:

> ERISA requires [e]very employee benefit plan [to] be established and maintained pursuant to a written instrument, specify[ing] the basis on which payments are made to and from the plan. The plan administrator is obliged to act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA], and ERISA provides no exemption from this duty when it comes time to pay benefits. . . .
>
> The Estate's claim therefore stands or falls by the terms of the plan, a straightforward rule of hewing to the directives of the plan documents that lets employers establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits. The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.
>
> And the cost of less certain rules would be too plain. Plan administrators would be forced to examine a multitude of external documents that might purport to affect the dispensation of benefits, and be drawn into litigation like this over the meaning and enforceability of purported waivers. The Estate's suggestion that a plan administrator could resolve these sorts of disputes through interpleader actions merely restates the problem with the Estate's position: it would destroy a plan administrator's ability to look at the plan documents and records conforming to them to get clear

> distribution instructions, without going into court. . . .
>
> [The fact that there is an exception for qualified domestic relations orders, where the plan administrator must look for beneficiaries outside of the plan documents] is a far cry from asking a plan administrator to figure out whether a claimed federal common law waiver was knowing and voluntary, whether its language addressed the particular benefits at issue, and so forth, on into factually complex and subjective determinations.
>
> These are good and sufficient reasons for holding the line, just as we have done in cases of state laws that might blur the bright-line requirement to follow plan documents in distributing benefits. . . . What goes for inconsistent state law goes for a federal common law of waiver that might obscure a plan administrator's duty to act in accordance with the documents and instruments. And this case does as well as any other in pointing out the wisdom of protecting the plan documents rule. Under the terms of the SIP [the ex-wife] was [the decedent's] designated beneficiary. The plan provided an easy way for [the decedent] to change the designation, but for whatever reason he did not. The plan provided a way to disclaim an interest in the SIP account, but [the ex-wife] did not purport to follow it. The plan administrator therefore did exactly what [ERISA] required: the documents control, and those name [the ex-wife].
>
> It is no answer, as the Estate argues, that [the decedent's] beneficiary-designation form should not control because it is not one of the documents and instruments governing the plan under [ERISA] and was not treated as a plan document by the plan administrator. That is beside the point. It is uncontested that the SIP and the summary plan description are documents and instruments governing the plan. Those documents provide that the plan administrator will pay benefits to a participant's designated beneficiary, with designations and changes to be made in a particular way. [The decedent's] designation of [the ex-wife] as his beneficiary was made in the way required; [the ex-wife's] waiver was not.

Id. at 300–04 (quotation marks and internal citations omitted).

After Kennedy, it is doubtful that the doctrine of substantial compliance remains viable, given the Supreme Court's emphasis on the duty of a plan administrator to act in accordance with the plan documents. The Supreme Court specifically stated that ERISA forecloses any

16

justification for inquiries into expressions of intent that do not comply with the plan documents. See id. at 301. Thus, it appears to this Court that the doctrine of substantial compliance did not survive the Supreme Court's decision in Kennedy.[14]

Without the doctrine of substantial compliance, it is clear that the last valid beneficiary designations in effect are the ones Publix received in October 2008 naming the Vargas Counter-Defendants as the beneficiaries of the ESOP and the 401(k) Plan. As such, Publix is entitled to summary judgment.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Publix's Motion for Summary Judgment (Doc. No. 34) is **GRANTED**.

(2) Ruiz's Motion for Summary Judgment (Doc. No. 41) is **DENIED**.

(3) The Clerk is directed to enter judgment in favor of Publix, Jessica Vargas, Alexander Perez-Vargas, and Andrea Vargas on Publix's counterclaim (Doc. No. 10). Specifically, the Court hereby declares the following: (a) that Rizo did not effect a change of beneficiary for her ESOP and 401(k) Plan in favor of Ruiz; (b) that Publix properly denied Ruiz's claim to the proceeds of the ESOP and the 401(k) Plan; (c) that Publix properly distributed the proceeds of the 401(k) Plan to the Vargas Counter-Defendants; (d) that Publix properly distributed 1/3 of the ESOP proceeds to Counter-Defendant Jessica Vargas; (e) that Publix is entitled to

---

[14]In Ng v. Prudential Insurance Co. of America, 172 F. Supp. 3d 355, 363 (D. Mass. 2016), the court opined, without deciding, that "it is questionable whether courts have the authority to apply the federal common law doctrine of substantial compliance in ERISA beneficiary designation cases." The court stated that it "read Kennedy as prohibiting the application of the substantial compliance doctrine [in beneficiary designation] cases." Id. at 364.

        distribute the remaining ESOP proceeds to Counter-Defendants Alexander Perez-Vargas and Andrea Vargas; and (f) that Publix owes no duties or obligations to Ruiz.

(4)     The Clerk is directed to enter judgment in favor of Publix on Ruiz's amended complaint (Doc. No. 5).

(5)     After entering judgment, the Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 30th day of March, 2017.

SUSAN C. BUCKLEW  
United States District Judge

Copies to:  
Counsel of Record